IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:08-CV-132-D

| | |
|---|---|
| RANDOLPH SHAW, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| v. ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Randolph Shaw seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After a thorough review of the record and consideration of the briefs submitted by counsel, the court recommends granting Claimant's Motion for Judgment on the Pleadings [DE-14], and recommends denying Defendant's Motion for Judgment on the Pleadings [DE-17].

## STATEMENT OF THE CASE

On September 12, 2003, Claimant protectively filed an application for disability DIB and SSI. (R. 237.) He claimed, on his Disability Report, that he became disabled beginning on October 17, 2003, but later amended the alleged onset date to May 17, 2003. Claimant asserts that he is unable to work due a number of impairments including high blood pressure, obesity, shortness of breath, and cognitive difficulties. (R. 252, 471.) Claimant's application was denied initially and upon reconsideration. (R. 214-24, 227-29.) Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took

place on March 13, 2006. (R. 465-93.) After the hearing, on July 20, 2006, the ALJ issued a decision denying plaintiff's claims. (R. 14-25.) The Appeals Council denied Claimant's request for review on May 30, 2008, rendering the ALJ's decision a "final decision" for purposes of judicial review. (R. 8-10.) See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.    The Standard of Review and Social Security Framework**

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and

2

rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two, the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three, the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four, the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five, the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges two errors: (1) that the ALJ's determination that Claimant's mental impairments did not meet the requirements of Listing 12:05C is not

3

supported by substantial evidence, and (2) that the ALJ improperly relied on testimony of the VE. For the reasons set forth below, the court agrees with Claimant's argument.

## II.     The ALJ's Findings

In his decision, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity since May 17, 2003, the alleged onset date of his disability. (R. 18.) Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited him from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of morbid obesity, degenerative disc disease, cardiomegaly, and reduced cognitive functioning. (R. 18.) However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 19-20.) Next, at step four the ALJ determined Claimant's RFC by considering all of his symptoms as well as the objective medical evidence. (R. 20-22.) At step five, the ALJ determined that Claimant could not return to his past relevant work. (R. 23.) Nonetheless, the ALJ concluded that although Claimant's exertional limitations did not allow him to perform a full range of sedentary work, there were a significant number of jobs in the national economy that he could perform. (R. 23-24.) Examples of such jobs included employment as an order clerk, Dictionary of Occupational Titles ("DOT") # 209.567-014, call out operator, DOT # 237.367-013, and parking lot attendant, DOT # 915.473-010. (R. 24.) As a result, the ALJ found that Claimant was not under a "disability," as defined in the

4

Social Security Act, from October 17, 2000, the first alleged onset date, through the date of his decision. (Id.)

## III. The Administrative Hearing

A. <u>Claimant's Testimony</u>

Claimant testified at his administrative hearing to the following information. (R. 467-93.) Claimant is 5'5" tall and weighs 355 pounds. (R. 469-70.) He was 44 years old on the date of the hearing. (R. 469.) Claimant completed the 12th grade in school. (R. 470.) He was in special education classes for his entire schooling.[1] (Id.) He has some difficulty reading and writing, although he said he could "write pretty good," he also stated that he could not fill out a job application without help because he could not read it. (R. 471.) Claimant received help filling out the forms necessary to apply for disability benefits. (Id.) Claimant said he can perform basic math, such as addition and subtraction, but is not able to determine how much change he should receive if he pays for something with a twenty dollar bill. (R. 484.) In addition, he does not know does not know how to multiply or divide numbers. (Id.)

Claimant is not currently working. The last job that Claimant had was with Carolina Enterprise in Tarboro, North Carolina, where he repaired machines in the factory and worked on the assembly line. (R. 471-73.) He worked there for about twelve years, and stopped on October 17, 2000, because all employees were laid off. (R. 472, 486.)

---

[1] There is some question as to whether Claimant was in special education classes throughout his entire schooling, and whether he received a regular diploma, or a certificate from the special education program. (R. 470, 484.)

5

Claimant suffers from high blood pressure, which results in dizzy spells and headaches. (R. 475-76.) He is able to walk for about 15 to 30 minutes before his high blood pressure causes him to get dizzy. (R. 477.) Claimant has a doctor whom he sees regularly.[2] (R. 475, 478.) Claimant uses a crutch to walk, in order to keep weigh off of his swollen leg. (R. 479.) His leg swells everyday. (Id.) Claimant also suffers from gout, arthritis, and trouble breathing. (Id.) He has difficulty sleeping due to depression and pain in his leg. (R. 482-83.) Claimant has to take naps every day. (R. 483.)

Claimant lives with his mother. (R. 481.) He is able to walk around a little bit during the day. (Id.) He is also able to watch a little TV with his legs propped up. (Id.) Claimant's mother does most of the housework, such as washing dishes and doing laundry, although Claimant is able to help a little bit. (Id.)

B. <u>Vocational Expert's (VE) Testimony</u>

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 485-93.) The VE was present throughout the hearing and listened to the testimony of Claimant. (R. 485.) The VE assessed Claimant's past job history as a maintenance repairer, which qualifies as heavy work, and a small products assembler, which qualifies a light work. (R. 488.) The ALJ then posed the following hypothetical:

> [A]ssume hypothetical claimant number one. Hypothetical claimant number one is the same age, education and occupational background as the claimant before us today. Hypothetical claimant number one would retain the residual functional capacity to lift 10 pounds occasionally, 5 pounds frequently; could sit about six out of eight hours total in an–six hours total with normal breaks

---

[2] Claimant stated that he sees his treating physician every month or two. (R. 475.) However, he also stated that six-months elapsed between his last two visits to his doctor. (R. 478.) Claimant also failed to produce medical records from 2003 to the date of his hearing from his treating doctor. (R. 477-78.)

> in an eight-hour day; could stand and walk about two hours total in an eight-hour day; would be able to–there'd be no climbing of ladders, ropes, scaffolds; no working at unprotected heights or dangerous equipment. Hypothetical claimant could understand and remember simple instructions, perform simple, routine, repetitive tasks; interact appropriately with coworkers, supervisors, members of the public, and adapt to routine changes in the job setting. Can you identify any jobs for hypothetical claimant number one?

(R. 489) The VE answered in the affirmative. Id. According to the VE, such an individual could hold employment as an order clerk, call-out operator, and parking lot attendant. (Id.) All of the above mentioned jobs existed in significant numbers in both the state and national economies. (R. 489-90.) The VE noted that the job of parking lot attendant is listed as "light" in the DOT and not "sedentary." However, the VE testified that based on her observation of how the job is actually performed–either sitting or standing without any appreciable lifting–she would consider it a sedentary job. (R. 489)

The ALJ then asked the VE whether a hypothetical individual, the same age, education and occupational background as Claimant who could do less than sedentary work and would have difficulty performing even simple, routine, repetitive tasks could find any work. (R. 490.) The VE testified that a hypothetical person with those limitations could not engage in full-time employment. (Id.)

**IV.   Documentary Evidence of Psychological Evaluations**

Claimant has taken a number of IQ tests. On September 10, 2001, Claimant received a consultative examination, including a Weschler Adult Intelligence Scale assessment. (R. 156-59.) He received a verbal IQ of 66, a performance IQ of 70, and full scale IQ of 65. (R. 157.)

On September 19, 2001, Gloria Edmonds, Ph.D., completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique form. She concluded that Claimant was moderately limited in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration and respond appropriately to changes in the work setting. (R. 170-71.) Nonetheless, she concluded that Claimant could perform simple, repetitive, routine tasks. (R. 172.)

On December 16, 2003, Edward V. English, M.A., performed a consultative examination on Claimant. (R. 326-28.) He administered the Wechsler Adult Intelligence Scale, and Claimant achieved a verbal scale IQ of 71, a performance scale IQ of 75, and a full scale IQ of 70. (R. 327.)

**V.      Claimant's Argument**

  A. *The ALJ's finding that Claimant's impairment did not meet or equal Listing 12.05 is not supported by substantial evidence*

Claimant contends that the ALJ erred by failing to find that his impairments meet or medically equal the requirements of one of the Listing of Impairments. Specifically, Claimant argues that his impairments meet or medically equal the Listing for mental retardation, 20 C.F.R. § Part 404, Subpart P, Appendix 1, 12.05C. (See Claimant's Brief at 2-5). For the following reasons, this court concludes that substantial evidence does not support the ALJ's findings, and that remand is appropriate.

In order to determine whether someone suffers from mental retardation, in accordance with Listing 12.05, a two step process is required. Norris v. Astrue, No. 7:07-cv-184-FL, 2008 WL 4911794, at *2 (E.D.N.C. 2008). First, an ALJ must engage in a "diagnostic" evaluation to determine if a claimant has "significantly subaverage general

8

intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404, Subpart P., App. 1, 12.05. If a claimant satisfies that first step, then an ALJ must consider the severity of a claimant's disorder to determine if he or she meets the requirements in A, B, C, or D. Id.

> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . . .

20 C.F.R. § 404, Subpart P., App. 1, 12.05(C). Claimant argues that he satisfies criteria C, because the most recent IQ test that he took established that he had a performance and full scale IQ of 70. The ALJ accepts that Claimant's IQ scores are within the 60 through 70 range. Accordingly, the issues in dispute are whether Claimant's low IQ manifested itself in deficits in his adaptive behavior before age 22 and whether he has a physical or mental impairment imposing additional and significant work-related limitations of function.

   1. <u>Diagnostic Analysis</u>

This first step, or the "diagnostic" element of the analysis, is not satisfied by a low IQ alone. <u>Norris</u>, 2008 WL 4911794, at *3. The "diagnostic description requires findings on both intelligence and adaptive functioning." <u>Id.</u> In this case, the ALJ did not expressly go through this two step analysis. However, it is clear that he considered some of the elements associated with the two-part inquiry.

The ALJ noted that Claimant's early school records show that he received special education services and repeated the fourth grade. (R. 19.) However, the ALJ went on to

9

note "there is no indication that claimant was in special education classes while earning the high school certificate. He was therefore apparently able to mainstream into regular education classes prior to high school." (R. 20.) This conclusion would certainly pertain to whether Claimant's onset date occurred before the age of 22. The ALJ is correct that Claimant's high school records do not specifically state that he was enrolled in special education classes, although there is no indication that the high school makes such a designation on its school progress records. (R. 114-16.) Claimant testified at his hearing that he was in special education classes throughout his entire schooling. (R. 470.) Claimant also reported to Robert Radson, M.S., during his September 10, 2001 consultative evaluation that he participated in "special" classes from second grade through high school. (R. 156.) Finally, Claimant's high school records indicate that he graduated with a "certificate" and not a diploma. (R. 116.) The ALJ failed to explain why he rejected Claimant's testimony, both at the hearing and to health care professionals, and instead determined that Claimant was not in special education classes. When an ALJ makes an adverse credibility finding, the ALJ must provide specific reasons for doing so. The Social Security rulings require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p Moreover, because the ALJ did not discuss Claimant's school records specifically in conjunction with the "diagnostic" prong of the analysis, it is unclear whether he discussed them in order to satisfy this element or the severity element of the analysis.

10

Another element of the diagnostic analysis deals with whether Claimant suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." The ALJ concluded that Claimant suffered from "reduced cognative functioning" but also noted that various health care professionals found that Claimant could perform simple, repetitive tasks. (R. 18, 19.) This could tend to show that the ALJ did not consider Claimant to suffer from significantly subaverage general intellectual functioning, but again, the ALJ failed to clearly address this element. Finally, the ALJ noted that Claimant has shown "a high degree of adaptive functioning" because he has worked at several jobs over the years. (R. 19.) However, the fact that a claimant has been able to work in the past does not necessarily suggest that the claimant does not satisfy the deficits in adaptive functioning requirement. See Radford v. Astrue, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (noting that "the fact an individual is able to work, complete household chores, and raise a family is not inconsistent with mild mental retardation").

> [The Diagnostic and Statistical Manual of Mental Disorders] and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. . . . Therefore, the fact that [a claimant] has a history of continuous employment in the past is irrelevant to whether he has subsequently become disabled due to the development of additional severe impairments.

Muntzert v. Astrue, 502 F.Supp.2d 1148, 1158 (D.Kan. 2007).

The ALJ did not specifically address the diagnostic element of the mental retardation analysis under 20 C.F.R. § 404, Subpart P., App. 1, 12.05(C), accordingly it is difficult to determine whether he considered Claimant to have satisfied this criteria. Moreover, the ALJ failed to explain why he rejected Claimant's testimony that he was in special education

11

classes throughout his entire schooling. However, even if the diagnostic prong of the analysis were satisfied, it is the court's opinion that the ALJ erred with regard to the severity element of the analysis.

### 2. Severity Analysis

Once the diagnostic prong is satisfied, the ALJ must consider whether a claimant's deficits are severe enough to satisfy the next step of the analysis. In this case, criteria C requires a finding that the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404, Subpart P., App. 1, 12.05(C). The ALJ noted that Claimant satisfies the IQ requirement, because his highest full scale IQ was a 70.[3] Neither the ALJ nor Mr. English, the psychologist who administered the test, questioned the accuracy of the scores. (R. 327.)

However, the ALJ noted that Claimant "does not have an additional physical or mental impairment imposing significant work-related limitation in light of past work history and residual functional limitations." (R. 19.) The "work-related limitation function" requirement is satisfied when the claimant is determined to have a severe impairment at step two of the evaluation process. 20 C.F.R. § 404, Subpart P., App. 1, 12.00A. Moreover, the Fourth Circuit has held that "if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § [12.05C]." Flowers v. U.S. Dep't Health & Human Servs., 904 F.2d 211, 214 (4th Cir. 1990).

---

[3] Claimant also took a prior IQ test in 2001 and received a full scale IQ of 65. (R. 157.)

12

In this case, the ALJ concluded, at step two, the Claimant suffers from the severe impairments of morbid obesity, degenerative disc disease and cardiomegaly, in addition to reduced cognitive functioning. (R. 18.) Because the ALJ concluded that these impairments were severe, he also necessarily concluded that they severely limited Claimant's ability to perform basic work related functions. See 20 C.F.R. § 416.920c (defining a "severe" impairment as one "which significantly limits [one's] physical or mental ability to do basic work activities"). Additionally, the ALJ concluded that Claimant was limited to performing unskilled sedentary work, and could not perform his past relevant work. (R. 23) Because the ALJ concluded that Claimant had severe impairments and could not perform his past relevant work, Claimant satisfies the severity prong of the analysis. See Luckey v. Dept. of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989) (holding that a claimant satisfied the second prong of 12.05C if the claimant has an additional severe impairment or cannot perform his past relevant work).

The ALJ's analysis starts with the second step of the analysis, as he considered at the outset whether Claimant met Listing 12.05C. There is no need to consider whether a claimant satisfies the requirements in A-D of 12.05, if the ALJ first finds that a claimant failed to satisfy the first diagnostic step of the inquiry. Because the ALJ does not specifically mention the first "diagnostic" step of the mental retardation analysis, and because the ALJ moved directly into a discussion of the second step of the inquiry, it is unclear whether the ALJ actually engaged in the first step of the analysis. See Hansen v. Astrue, No. 4:07-CV-24-WW, at 7 (E.D.N.C. Nov. 2, 2007) (noting that the ALJ did not specifically address the first step in the process of assessing mental retardation under Rule 12.05, and remanding for further proceedings). Accordingly, it is the court's opinion that

the ALJ erred in his analysis with regard to whether Claimant's impairments meet or equal Listing 12.05.

The ALJ determined incorrectly that Claimant did not satisfy the severity criteria of Listing 12.05C and failed to properly articulate his findings to support the conclusion that Claimant lacks "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Accordingly, the court believes the matter should be remanded so that the ALJ can perform the required analysis pursuant to Listing 12.05. Because the court recommends remanding based on this issue, it does not address Claimant's additional arguments.

## **CONCLUSION**

The undersigned **RECOMMENDS** that the plaintiff's motion for judgment on the pleadings be **GRANTED**, the defendant's motion for judgment on the pleadings be **DENIED**, and the case be remanded for a rehearing consistent with this Memorandum and Recommendation. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.

This the 10th day of July, 2009.

_____

DAVID W. DANIEL

United States Magistrate Judge